UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20923-CR-ALTMAN

**UNITED STATES**,

    *Plaintiff*,

v.

**STEVE BRYAN ROJAS,**

    *Defendant.*

_____/

## **ORDER**

The Defendant, Steve Bryan Rojas, is a fraudster with a criminal history who's serving a three-year sentence for fraud. He's filed a *pro se* Motion to Reduce Sentence or for Compassionate Release (the "Motion") [ECF No. 280].[1] We deny his Motion for four reasons. *First*, he's failed to exhaust his administrative remedies. *Second*, the § 3553(a) factors weigh against a sentencing reduction. *Third*, his circumstances are neither compelling nor extraordinary. *Fourth*, he's failed to show that he's no longer a danger to the community.

### THE FACTS

Rojas fraudulently obtained thousands of dollars'-worth of cell phones through the unauthorized use of victims' personal identifying information ("PII")—specifically, their addresses and social security numbers. *See* Factual Proffer [ECF No. 137] at 1. Rojas would use the victims' addresses and social security numbers to open lines of credit with Sprint. *Id.* He would then walk into Sprint stores and buy—on his victims' credit—thousands of dollars'-worth of cell phones. *Id.* at 1–2.

---

[1] The Motion is ripe for adjudication. *See* Government's Response to Defendant's Motion for Compassionate Release (the "Response") [ECF No. 281]. Rojas chose never to reply, *see* Docket; and the time to do so has passed, *see* S.D. FLA. L. R. 7(c)(1)(A).

Rojas did this "hundreds" of times and admitted to stealing over $50,000-worth of cell phones. *Id.* at 2.

In 2019, Rojas pled guilty to the "Use of Unauthorized Access Device" (Count 6) and "Aggravated Identity Theft" (Count 13). *See* Plea Agreement [ECF No. 136].[2] For these crimes, the Court sentenced him to 39 months in prison. *See* Judgment [ECF No. 253]. His scheduled release date is January 4, 2022, *see* Response at 1, which means he has about 7 months—or 18%—of his sentence remaining.

## THE LAW

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). Federal law permits a district court to modify a prisoner's sentence "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," and sets forth the necessary analysis for determining whether the petitioner is entitled to such a reduction. *See* 18 U.S.C. § 3582.

*First*, the Court must ascertain whether the prisoner "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider [ ] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or

---

[2] At sentencing, the Government dismissed one count of "Conspiracy to Commit Access Device Fraud." *See* Plea Agreement; Indictment [ECF No. 3].

to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see United States v. Stuyvesant*, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020).

## ANALYSIS

### I. Exhaustion of Administrative Remedies

Rojas claims to have exhausted his administrative remedies because (he says) he submitted a request for compassionate release to the Warden of his facility (USP Coleman I) and then waited 30 days without a response. *See* Motion at 2. But the BOP has no record of any such request. *See* Response at 3. And Rojas doesn't help us resolve this dispute. He didn't, for instance, attach a copy of his request or provide any details about it—scilicet, where he sent it, to whom, or when. *See* Motion at 2. This lacuna in the evidentiary record, of course, redounds decisively to Rojas's detriment because it was his burden to prove that he's exhausted his remedies. *See United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) ("The defendant bears the burden of establishing that his circumstances qualify for compassionate release."); *United States v. Jackson*, 2020 WL 5942201, at *2 (E.D. La. Oct. 7, 2020) ("The defendant bears the burden of demonstrating that he is entitled to compassionate release and that he has exhausted his administrative remedies."). *Cf. Cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("And a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case."). Because Rojas has failed to meet his burden, his Motion must be **DENIED**. Nevertheless, for the reasons set out below, even if Rojas had exhausted his administrative remedies, his Motion would still be denied.

### II. 18 U.S.C. § 3553(a)

Section 3553(a) requires the district court to consider (among other factors) "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . .

. to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2).

These statutory factors weigh heavily against Rojas here. Rojas contends that § 3553(a)'s penological objectives have been achieved. So, he says, "the emotional need for retribution has ended[.]" Motion at 5. In addition, he vows never to commit any future crimes. *Id.* ("He knows that crime does not pay . . . . The second best deterrent, and the longer lasting one, is to send him back to the community where he will let everyone know that prison is no joke – crime will be punished, whether violent or not. . . . His voice within the community is society's best deterrent to crime."). In this respect, Rojas notes that the BOP has classified his risk level as "very small, which contributes to his minimum security level," *id.*, and he characterizes himself as "a model inmate" with an "impeccable" prison record and "excellent" participation in "self-improvement programs," *id.* at 6.

The Court isn't persuaded. As the Government points out, Rojas "committed a serious offense, he fraudulently obtained thousands of dollars' worth of cellular phones through the unauthorized use of victims' personal identifying information." Response at 6. And Rojas has proved himself incapable of rehabilitation. He, in fact, has two prior convictions for crimes involving theft or fraud—the second one, a federal case whose lessons he never internalized. *Id.* What's worse, after he was released on that federal case, he was placed on supervised release, where one would expect him to be on his very best behavior—proving his commitment to the social compact, impressing the court with his capacity to make an honest living, reforming his prior penchant for stealing from other people. Instead, as we've seen, he committed the offenses that resulted in *this* conviction—all while on federal supervised release. Now, he asks the Court to ignore all that and trust him when he says that, after this conviction—finally—he's seen the light. Chutzpah doesn't begin to describe it. Finally, Rojas hasn't been "a model inmate." To the contrary, as the Government notes, the BOP has had to

4

discipline him twice—including, most recently, in September 2020, just a month before he filed this Motion. *Id.* at 6–7.

The § 3553(a) factors thus counsel strongly against a reduction in this case.

### III.    18 U.S.C. § 3582

Even if Rojas had exhausted his administrative remedies—and even if the § 3553(a) factors had favored his release—his Motion would still fail because his circumstances are neither extraordinary nor compelling. The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)    extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)   the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; . . .

18 U.S.C. § 3582.

Because Rojas is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But Section 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). The Commission has helpfully defined the contours of the test as follows:

1. **Extraordinary and Compelling Reasons.**--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   **(A) Medical Condition of the Defendant.**

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   **(B) Age of the Defendant.**--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1.

As a threshold matter, the reference to "subdivision (2)" requires Rojas to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

> **(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Rojas bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the

community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *Heromin*, 2019 WL 2411311, at *2.

Rojas has failed to show "extraordinary and compelling reasons" for a sentence modification. To begin with, he can't satisfy the "Age of the Defendant" test: He is 31 years old, not 65; he has not alleged any age-related decline; and he has served neither 10 years nor 75% of his overall sentence. His request for relief therefore depends on his ability to meet either of the two prongs of the "Medical Condition of the Defendant" test. The first requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(i). The second requires him to show that he suffers from conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at n.1(1)(A)(ii).

Rojas offers three conditions that (he says) qualify him for compassionate release: high-blood pressure, a BMI over 30, and an already-treated urinary tract infection ("UTI"). *See* Motion at 1. None justifies the relief he is seeking. To begin with, Rojas does not contend that these conditions qualify as "terminal" illnesses under U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(i). Nor does he claim that his conditions are, by themselves, (1) "serious physical or medical condition[s]," (2) "serious functional or cognitive impairment[s]," or (3) conditions contributing to his "deteriorating physical or mental health," as required by U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(ii). *See id.* Instead, he says that these conditions, when coupled with the ubiquity of COVID-19, threaten his health and jeopardize his life. *See generally* Motion. We disagree.

*First*, a BMI over 30 doesn't, standing alone, justify early release. *See United States v. Battis*, 2020 WL 5094844, at *2 (M.D. Fla. Aug. 28, 2020) ("Although obesity poses an increased risk of severe illness from the virus, it does not establish an extraordinary and compelling circumstance."); *United States v. Hayes*, 2020 WL 3611485, at *2 (M.D. Fla. July 2, 2020) (holding that obesity and hypertension

"alone or in combination with Covid-19" are not extraordinary). This is especially true because, as we discuss below, Rojas has already had COVID-19 and didn't suffer any complications.

*Second*, Rojas doesn't provide any evidence of hypertension. *See generally* Motion. This wouldn't be so big a deal if his BOP medical records revealed a high blood pressure. But those medical records show no such thing. *See* Response at 3. And this Court will not release a thrice-convicted fraudster on the basis of an unverified (and uncorroborated) self-diagnosis. *See United States v. Cabrera*, 2020 WL 6219332, at *5 (S.D. Fla. Oct. 22, 2020) ("This Court will not release Cabrera on the basis of unsubstantiated claims about diseases he himself never disclosed, either to this Court (at sentencing) or to the BOP."); *Heromin*, 2019 WL 2411311, at *2 ("But the bulk of Heromin's Motion rests on his self-diagnosis—not upon the judgment of his medical provider. . . . Without his medical provider corroborating either of these requirements [for compassionate release], Heromin has not shown a foundation for compassionate release based on his medical condition.").

*Third*, Rojas doesn't explain how a UTI—for which he's received treatment, *see* Response at 3—increases his susceptibility to COVID-19. *See generally* Motion. Nor could he: The CDC, after all, doesn't list UTIs as one of the conditions that, in people with COVID-19, increases the risk of medical complications. *See* People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed May 11, 2021).

*Fourth*, Rojas's argument that he's at risk for serious medical complications from COVID-19 is dispositively undermined by one simple fact: *he's already had COVID-19 and recovered*. *See* Response at 4–5. The Court, therefore, need not consider whether his BMI and high blood pressure combine to place him at a higher risk of serious illness because we *know* that, in his case anyway, they don't. *See, e.g.*, *United States v. Camarillo*, 2020 WL 6081661, at *3 (S.D. Fla. Oct. 15, 2020) ("Thus, as Defendant has recovered from COVID-19, the Court is unpersuaded that his history of asthma alone presents

9

sufficient circumstances to warrant his release."); *United States v. Elliott*, 2020 WL 5171363, at *3 (S.D. Ga. Aug. 31, 2020) (denying the defendant's motion for compassionate release because he had already tested positive for COVID-19 and recovered).

Attempting to parry this conclusion, Rojas contends that U.S.S.G. § 1B1.13 doesn't apply to motions for sentencing reductions filed *by inmates*. *See* Motion at 6. Distilled, his argument is that § 1B1.13 is not an "applicable" policy statement when it comes to motions filed *by inmates* because, by its terms, that section applies only "[u]pon motion of the Director of the Bureau of Prisons." *United States v. Jones*, 980 F.3d 1098, 1110 (6th Cir. 2020) (reaching that conclusion). But the Eleventh Circuit squarely rejected this argument in a published opinion released late last week. *See United States v. Bryant*, ___ F.3d ___, 2021 WL 1827158, at *1, *13 (11th Cir. May 7, 2021) (holding that "1B1.13 is still an applicable policy statement for a Section 3582(c)(1)(A) motion, *no matter who files it*," and, thus, that "district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with 1B1.13" (emphasis added)).[3]

All we're left with, then, is a thrice-convicted fraudster who committed *these* crimes while on supervised release. Since his circumstances—31 years old and relatively healthy—are neither extraordinary nor compelling, his Motion is **DENIED**.[4]

---

[3] Even if this Court were to adopt Rojas's approach and stray beyond the guidance provided in § 1B1.13, the Court's ruling would be the same. Rojas, after all, has provided nothing approaching the sort of "extraordinary or compelling reasons" that would justify release, regardless of how that phrase is precisely defined.

[4] Rojas's once-legitimate concerns about COVID-19 may soon become moot. The Bureau of Prisons has represented that, out of a total prison population of 127,000 inmates, there are only 126 active cases of COVID-19. *See* BOP COVID-19 Tracker, https://www.bop.gov/coronavirus/ (last accessed May 6, 2021). Of more relevance to Rojas is the fact that there are currently *two* cases of active COVID-19 at his facility, USP Coleman I. *Id.* The BOP has also vaccinated the vast majority of its inmates and staff. According to its most recent data, the BOP has administered 161,000 doses of COVID-19 vaccines to its 127,000 inmates and 36,000 staff members. In other words, if Rojas hasn't received a COVID-19 vaccine already, he's set to receive one very soon.

### IV. 18 U.S.C. § 3142(g)

Of course, Rojas's Motion fails for yet another reason—because he hasn't shown that he no longer poses a danger to his community. As the relevant Guidelines provision makes clear, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he no longer poses a threat to society, as defined by 18 U.S.C. § 3142. Rojas has not even attempted to show that he represents no such danger, *see generally* Motion (failing to argue any of the § 3142 factors), and (again) it was indisputably his burden to do so, *see Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *Heromin*, 2019 WL 2411311, at *2. This omission is thus fatal to his claim.

\*\*\*

To recap: Rojas hasn't exhausted his administrative remedies, his circumstances are neither extraordinary nor compelling, the § 3553(a) factors counsel against the reduction he seeks, and he's failed to establish that he's no longer a danger to his community. Accordingly, the Court hereby **ORDERS and ADJUDGES** that Rojas's Motion for Reduction in Sentence [ECF No. 280] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 11th day of May 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record